BOISSONNEAULT, Plaintiff in error, v. STATE, Defendant in error.

*No. State 138. Argued March 3, 1971.—Decided March 30, 1971.*
(Also reported in 184 N. W. 2d 846.)

For the plaintiff in error there was a brief and oral argument by *Robert P. Goodman* of Racine.

For the defendant in error the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief were *Robert W. Warren,* attorney general, and *William A. Platz,* assistant attorney general.

CONNOR T. HANSEN, J.    The testimony of the defendant at the trial disclosed the following: The altercation occurred in the room of Clemence John Elling, located in a building in Racine, Wisconsin. The defendant resided in an apartment in the same building and had lived there for about one week prior to the alleged offense. The defendant returned to the building at approximately 6:30 p. m. on August 8, 1969, intending to go to his room. Immediately prior to his return there, he had been in a tavern and had consumed six or seven glasses of beer. On his way to his apartment the defendant passed the room occupied by Elling, who was standing in the doorway, and asked the defendant to come in and have a beer. Elling asked him to have a seat, and the defendant, not seeing a chair, sat on the edge of the bed. Elling asked him if he liked women, and the defendant replied, "Yes," and stated that he was married and had two children. The deceased then approached the defendant and put his hand on the upper part of the defendant's thigh. The defendant pushed his hand away and stated, "I don't play that way." Elling then grabbed the defendant's testicles, and the defendant pushed him away. This precipitated a fight between the two. Both men fell, and the defendant threw Elling back, got up, and started for the door. Defendant then heard a glass break and simultaneously felt a pain in the back of his neck. Defendant then turned around.

Elling had a broken glass jar in his hand and went for the defendant's face, missed, and then got his hand inside the defendant's sweat shirt. The defendant slapped the glass out of his hand, hit Elling three times—in the stomach, on the side of the head, and in the face—and Elling fell to the floor.

Two members of the family that managed the apartment apparently heard the commotion and came to the apartment. One of them inquired through the closed door as to Elling's condition, and he stated he was sick.

The police were called. When the police officers arrived, one of them examined Elling. The officer testified that Elling was lying on the floor and clutching a jacket and a blanket to his chest. He saw that he was not breathing and could feel no pulse. He removed a set of dentures from the back of Elling's throat and gave him artificial respiration but was unable to revive him. An ambulance was called, and Elling was taken to a hospital where he was pronounced dead on arrival. The cause of death was suffocation as a result of the decedent's aspirating stomach contents into his trachea. The defendant was also taken to the hospital and had stitches applied to close the lacerations on his chest and on the back of his neck below the ear.

The state concedes that the evidence does not establish the commission of the crime of manslaughter as defined by sec. 940.05 (1), Stats. We agree.

Manslaughter, as defined by sec. 940.05 (1), Stats. (heat of passion), is a mitigating circumstance which has the effect of reducing the crime of murder to manslaughter. Hence, heat of passion, as used in the manslaughter statute is not an element of a crime in the usual sense so that a death which is either a lesser degree of homicide or is not homicide at all would become manslaughter if the heat of passion factor appeared. Thus, before a defendant can be found guilty of man-

slaughter while in the heat of passion, all of the elements of either first- or second-degree murder must be present.[2]

The trial court's opinion finds only "that the defendant acted in the heat of passion, and as a result of the conduct of the defendant, the victim Clemence John Elling died." There is no finding, nor could there be one, that all the elements of either first- or second-degree murder were present.

The judgment of the trial court is reversed, with directions to dismiss the proceedings.

*By the Court.*—Judgment reversed, with directions to dismiss.

---

[2] *See* Wis J I—Criminal, Part II, 1130, 1135.